Good morning. May it please the court. My name is Anna Darbinian. I'm an attorney with the firm of Asherson Klein Darbinian in Beverly Hills, California. I represent the petitioner, Rok Gjurashaj. Seated at the council's table today with me is my partner, Neville Asherson, who submitted the opening brief. Also an associate attorney, Mr. Thomas Perkinson. Notwithstanding the many legal issues that we raised in our opening brief and subsequent reply brief, I would like to concentrate today on the most, I guess, the legal issue at hand is whether or not the petitioner is eligible for 2-12 age relief within the INA, within the Immigration Nationality Act. I think the most important issue today is whether or not we would be able to establish that adjustment of status is not considered to be an admission under the INA 2-12 age section of the law. Let's back up one minute just to get one thing straight. Your position depends on him having been admitted as a refugee but then later adjusting. That's correct. And the government disputes that premise. So it would be helpful if you started with that. Of course. The facts in this case, Judge Personne, is that Mr. Gjurashaj was admitted as a refugee back in 1969 when he was 16 years old with his parents. Well, the government says he admitted several times during these proceedings that he was admitted as a lawful permanent resident rather than adjusted later. Right. And I would address that by the following comment, that the certified administrative record at page 381 and 382 specifically have a stamp by an inspecting officer that states that the individuals in that under that petition, which included the parents and the sister and my client, were admitted as conditional entrants and admitted as refugees. Is there anything in the record about when he adjusted? Yes. There is a record under the current law at the time. Now, I'm asking when. Two years later, which was in 1971. Which is ñ that's just by inference. I don't ñ I believe there's some indication in the record that would be the filing of the adjustment of status application, Your Honor. But I wouldn't ñ The government said not, so I don't know. If I could present that at rebuttal, I would make sure that ñ Okay. All right. Go ahead. Okay. But the fact is that the current issue at hand is whether or not the government can establish that my client entered as a legal lawful permanent resident under the INA-212H. There's two distinct issues here within the INA-212H, which is admission, which is the first element, which is a procedural element, and in the Hingsom v. Holder matter that this honorable court of the Ninth Circuit held, that procedural element of admission requires physical entry, which would be at the point of process  Well, it didn't really hold that. I mean, the sum ñ or maybe ñ I mean, it may have assumed that. I mean, the sum ñ you're talking about the sum opinion, right? That's correct, Your Honor. And it talks at times as if that person came over the border, but it's not really clear that it did come over the border. And one of the cases that they rely on, I think the Fourth Circuit opinion, it's clear that it didn't come over the border. So it's not plain to me. I mean, I understand they used that language. Right. But it's sort of an assumption rather than anything that was actually ñ and the holding of the case would still stand up, i.e., the distinction between procedural and substantive admission. And in fact, actually, it seems to be cuts against your argument without that assumption that somebody was really crossing the border. Well, if I may address that, Your Honor, I believe that the sum matter does discuss two main issues, which would be the procedural and substantial arguments. Right. However, from what I understand from the facts is that Mr. Sum actually got consular processed. Well, it doesn't say that. I mean, I've read it very carefully. It's an assumption, but it's really not at all clear. And I've even gone back to the briefs and I can't find it. Right. Well, I guess then I would just follow up with that argument by saying that the sum case actually followed Martinez v. Mukasey, which is the Fifth Circuit case, and they basically distinguished it, actually. And I believe that in the Martinez case it explicitly states the facts that he entered as a visitor and was then ñ Well, right. But that case just presents this very issue. But some did not present this issue, the issue in this case. Okay. I understand what you're saying, Your Honor. I have taken a different read on this, but I'm happy to address that at rebuttal as well if I may. And I also wanted to request, which I forgot, a five-minute rebuttal if I may in this case. You have to wait a short time, though. Go ahead. Thank you. And so I think that the plain language in the statute at 212H and the express definition of admission that Congress has followed or enacted, rather, is that an admission requires a physical entry at a border crossing, at a land port, at a sea port, and as well as at the airport. And so for the government or for the BIA or the agency to uphold a different understanding of that would be in contradiction of the INA 101A13, which defines admission as requiring an entry. And so for the agency to take a different approach, also in light of the most current BIA decision, which is the LESG, which basically does define admission, in fact, actually says that adjustment of status is not admission, and that in order for the LESG, which was a BIA, it is spelled, excuse me, A-L-I, excuse me, A-L-Y-A-Z-G-A-R. I thought that case held that it's always admission. I believe it said that adjustment can only be in admission when doing so is necessary to give the statutory provision meaning and sense. And since the 212H is very plain, unambiguous, and very clear, and it states so, that there are two elements required for the 212H not to apply. I mean, Congress enacted the statute specifically to allow two classes of aliens. One would be legally admitted as lawful permanent residents. Rather, two elements would be admitted and admitted lawfully for permanent residents. And the second, for the 212H waiver not to apply, it would be for aliens who are legal permanent residents who get admitted at a port of entry as lawful permanent residents. My client in this case, respectfully, could have not been adjusted to that of a permanent residence, and so, therefore, the second element could not be met in my client's case, because it is not given that as a refugee you can come into the United States and definitely and guaranteed adjustment of status, because adjustment of status can be denied by exercise of discretion. There could be other inadmissible grounds. And I think that the reason Congress enacted the statute in such a way was to allow individuals who potentially may have some very substantive equities in this case, such as individuals with families, ties to this country, and some other hardship elements to be able to take advantage of this. And that's the reason that congressional intent that has been spoken in this case. Kagan. The case that you're talking about is ALYAZJIA. And didn't that case hold, I thought definitively, that for all purposes under the INA, adjustment of status is an admission? Well, I think that they were trying to, under the urgency of the Department of Homeland Security, clarify for the absolute meaning of what an admission is. Right. And what did they hold? You said that they held the opposite of what I think they actually held. Right. I took the reading as adjustment of status is, can only be an admission when doing so, is necessary to give a statutory provision some sense and meaning. And I believe that in 212H there's no need for that because. And where are you finding that in that opinion? I could at rebuttal be able to. I have the case and I'd be happy. And so I think that the. I have one other statutory question. Yes, please. Doesn't he have to be applying for admission to get this waiver? Isn't this waiver only available to people applying for admission, the 212H waiver? Well, it would be based on the adjustment. He could readjust. What does the statute say, though? The statute says an applicant for admission can get a waiver, right? That's correct. So unless an adjustment of status is an admission, he's just out of the waiver provision altogether.  But he would be readjusting his status with the waiver. Right. So he has to be being admitted. Correct. Otherwise the whole provision doesn't apply. That's correct. All right. So you now want to read the admission in one part of the same statute as meaning something different from the admission in the other part of the statute. Well, I would humbly disagree because I think that the admission here is I am admitting that he was admitted, but not as a legal permanent resident. He was admitted as a refugee. It's a completely different. All right. But now what does he want? Well, he would like to have readjustment. Right. Does he want to go back over the border again? No, it would not apply. No. He wants to be admitted as a legal permanent resident. That is correct. So therefore, he wants to read the statute as providing that an admission means becoming a legal permanent resident. Well, in order for him to adjust status, Your Honor, it would not require necessarily any other showing other than his original admission as a refugee. He was lawfully admitted into the U.S., but not as legal permanent resident. All right. But what is he looking for? What does 212H provide? 212H provides a waiver for his aggravated felony. For what? For admission. For admission as a lawful permanent resident. Right. So he has to be trying to be admitted. Correct. But I think the way, if I'm understanding this correctly, Your Honor, and forgive me if I'm not, but I think that if you're saying that he is trying to interpret the 212H to his advantage at a, you know, in a different kind of a context, I would sort of humbly disagree, because he was admitted as a lawful status, but not as a lawful permanent resident, which is what 212H requires a showing of. Okay. That's the plain reading of the statute. Okay. Which is very clear, unambiguous, and it requires that this Court, you know, which I think in the Hingsum does provide some legal basis for this Court to find that this case requires remand to the board so that my client can apply for 212H waiver. And, you know, concurrently, there's an argument of 212C, which I don't know about. He did apply originally for 212H waiver. That's not an exhaustion problem, right? Well, no, he didn't. We actually brought that up at the first time at a motion to reconsider remand, because it was a prior counsel who represented him at immigration court level, and 212H was not one of the forms of relief that was applied for at that stage. We brought that up at motion to reconsider. We requested that it be remanded. We cited to Mukasey, Martinez v. Mukasey, which is the Fifth Circuit case in 2008. The board refused our arguments on the basis that that's a Fifth Circuit case, and my client's case arose in the Ninth Circuit. And similarly, the Eleventh Circuit has also spoken on this matter, which is the Lanier case, which basically rejected the board's argument in Koljanovich, which also distinguished Martinez v. Mukasey, and basically cited to it just not agreeing with it as basically applicable in that case, but also not disagreeing with it. So the fact that it was, I would believe that it was cited as good law, but not applicable in that particular case. And in Lanier, the facts are very similar. Well, actually, to the extent that Lanier came in illegally to the United States and adjusted status much later, was convicted of an aggravated felony, and was basically still able to adjust status through 212H, which is what the court found, that she meets the eligibility for 212H relief. And because of the strict meaning of the statute, the reading, the plain language of the statute. And to actually read it any other way would just be complete injustice, because that's not what Congress envisioned when it basically clearly distinguished it in two different classes of individuals or aliens, and it has two different distinct phrases of terms of art. But some explains that, right? I mean, the reason for saying it twice, essentially, is because the question is whether he was admitted as a lawful permanent resident even if he wasn't really properly one. Correct. All right. So that could be true at the border or not at the border. That explains the statute without reference. I understand that some assumed he was at the border, but its basic point about the procedural and substantive difference would pertain even if he was never at the border. Well, I think basically what I'm hearing from you, Judge Brezon, is that in some case we're not certain or we're assuming that he was at the border. At some point in time, some officer would have to determine that basically he was admissible. Well, somebody did here. They admitted him. That was an officer determining that he was admissible. Right. What we're arguing is that it was obviously at the time of, at the port of entry. It was not at post-adjustment. It was at the port of entry that he was admitted, and then he claimed that he was fraudulently, he was not admissible due to the fact that he had not disclosed a very pertinent fact, which was his prior arrest. And so that's where the Court said that there's the procedural, they defined the procedural element, which is basically that the, that some was basically lawfully admitted at the port of entry, which requires a physical entry, which is what the distinction in this case is. And second part of the element is that he was lawfully admitted for permanent residence, which in Hingsam he was. My client is completely in a different state altogether, and so it's indistinguishable with the case of Martinez v. Mukasey and Lanier, which is from the 11th Circuit, which the facts are somewhat similar, because they came in under some other status, and Lanier, of course, came in illegally. But in Martinez, he came in as a visitor and then later adjusted, got convicted of an aggravated felony and was allowed to, the Fifth Circuit found that due to the plain definition of the statute of 212H, he did, they applied the first element, the 101-813 definition of admission, which means that my client, that individual was admitted at the port of entry, physical admission. And then the second element was that he basically was not admitted as a lawful permanent resident, therefore requiring remand so that he could be, he could file for 212H eligibility, which is what we're asking that this honorable court do in this particular case. And you're out of time, but I will give you a minute for rebuttal. Thank you very much. Good morning, Your Honors, and may it please the Court. My name is Rob Stalzer. I'm here on behalf of the Attorney General. Like Petitioner, I will largely confine myself, I think, because the Court's interest in the 212H issue to that issue. Let me ask you one minor, and I don't want to get lost on this, but one minor question about the 212C relief, which is that actually the BIA denied it on the ground that was then overturned in Judulon. Is that right? Correct, Your Honor. So why don't we need to remand on that anyway? I understand that there's this problem about the fact that he didn't plead guilty and that could have been another reason, but that wasn't the reason that was given. The reason that a remand on the basis of 212C would not be helpful is because he can't get relief under 212C. Like you said, because he went to a trial and not a plea, his older conviction is — But I guess that issue, although we've held it, is still kind of in the air in the sense that the Supreme Court's never really decided that question, right? Right. But this Court, over the years in interpreting St. Cyr, has said you have to have some exchange for value in order to preserve 212C relief. And because he went to a trial and not a plea back then — So you're just saying we should just usurp the board and not bother. But technically speaking, we really should do that. Well, there's two reasons, Your Honor. That was the first one, yes. And the second reason was, of course, because 212C relief won't help him for his 2005 conviction. He would still need a 212H waiver for that one. So — Oh, I see. That may be. All right. That may be. Okay. The arms trafficking conviction? No, the 2005 conviction for theft of personal property. And that — is that conviction, has that been — there was some discussion that it was being expunged? To my knowledge, it wasn't. It's not part of the record below. Do we know? Maybe on rebuttal we can find out what happened there. In any case, because 212C isn't going to help him, he has to get 212H if he wants  All right. What about the — on 212H, is it still your position that he actually came as a lawful permanent resident? Yes, Your Honor. That is — But the documents do refute that. And the BIA said he came as a refugee. Right. The BIA and the IJ, and there's documents in the record that show that he came as a refugee. He came as a refugee. It's possible that he concurrently entered as a lawful permanent resident. But the document says conditional. It says it. It says conditional. I think the one page that has the conditional stamp says that he has to return for processing at the Italian consulate. Right. But that isn't the same as — if you come as a refugee, that's not the same thing as becoming a lawful permanent resident. You have to go through another separate procedure, and usually that's adjustment of status. Indeed, Your Honor. And actually the Petitioner wrote about that in her reply brief — in the reply brief here. And it's interesting. If you look at the statute for how you go from being a conditional resident as a refugee to a lawful permanent resident, what you have to do is you have — it says in the statute, Refugee shall return to the custody of the service for inspection and examination for admission. Just exactly what we're talking about. Admission as a lawful permanent resident. The rest of that is — No, it doesn't say lawful permanent resident. It says as an immigrant. Yeah. I mean, you're reading words into that that aren't there. Well, and that's — that procedure, returning to the service for inspection and admission, is exactly what the sum case was talking about. It said to be lawfully admitted for lawful — Not lawful permanent resident. That's something entirely different. That's — you can come in as a refugee, but then, you know, the adjustment of status is just a separate procedure. Right. But there's no evidence that that adjustment of status took place. It seems that he was admitted as a lawful permanent resident. He had, like I said, throughout his papers, including not just the papers from recently. The exhibit — what is it? The IJ refers to exhibit I-590, which the IJ characterizes as showing that he came in as a refugee. Right. Do you have that exhibit, I-590? It's part of the record. I can pull it up if you'd like. Right. I don't happen to have it right in front of me, but it's characterized by the IJ to say that he came in as a — as a refugee. That's the document. And the ultimate conclusion, however, was that he was admitted as a lawful permanent resident. Where was that conclusion? I think it's in the board's — it's necessary to the board's conclusion. No, the board says he came as a refugee. Yeah. I think it's necessary to the conclusion that he's not eligible for 212-H relief. But not because of that. Because they regard Martinez as not binding in the Ninth Circuit and you don't want to follow it. Not only for that reason, Your Honor. Also, not just because Martinez is not necessarily binding in the Ninth Circuit, but because I believe the evidence was so overwhelming that he was admitted as an LPR. I would — I'm sorry. Could you show me where that is? Go ahead. Where do you see that? I mean, isn't the evidence really that he was a — admitted as a conditional LPR? To the extent — no, I don't believe so. And for that — because it's in his asylum application, his naturalization papers, his 42A. And I would direct the Court to his judicial admission during the pleading stage of this case, which is at 214 of the record. The judge says to him, in Allegation 6, that you're admitted to the United States as a lawful permanent resident on October 15th, 1969. Is that correct? And he says, yes. And he says, yes. And this Court's recent decisions of Perez, Mejia, and Pagayan state that when an alien makes an admission at pleading, no further evidence concerning that issue of fact admitted or lawful permanent residence. But look, the Board opinion, the second Board opinion, and I'd like to get to the merits of the issue. I don't know. They were going to just agree to go on anyway. But the second Board opinion, unless I'm reading it wrong, says — when it's talking about why it's not going to apply Martinez, it says that the Respondent does not cite the Ninth Circuit precedent addressing whether an alien who has adjusted his or her status to that of a lawful permanent resident is eligible, et cetera. I mean, they are assuming that that's what happened. And you seem to be assuming the opposite. I think they're disputing the premise, Your Honor, and also pointing out that Martinez wouldn't be binding on this Court. Where are they disputing the premise? From what you just read, Your Honor, from the suggestion that this Court doesn't have any — even if Petitioner's factual premise were correct, this Court — there's no binding law in this Court saying that that would preserve for him. All right. Let's assume for the rest of this argument that what he says happened is what happened and that that's — and he hasn't — and that that's the premise on which the IJ and the BIA have decided the case. Very well, Your Honor. Now you can tell us why the — now, I should say by preference that there is actually an earlier case in this Court with exactly this issue where it's probably going to be decided, not this one. But nonetheless, it would be helpful to have you argue the issue. Of course, Your Honor. Because — well, the sum case itself had an alien who had entered unlawfully and then either adjusted or perhaps readmitted. I also tried to look back into some documents to see what that alien status were and I couldn't find anything. But it was, again, one of these two-step processes. Right. But we have a fair amount — I mean, we have a case like this on the last calendar where you have — that I think the government took a slightly different position on what constituted admission in your taking. I wasn't aware of that, Your Honor. Well, I mean, I — It happens. It happens, yeah. Well, in any case, even under the alternative construction, the construction that you have urged, Your Honor, that he entered as a conditional permit resident and then adjusted status. His adjustment of status at the time wasn't this adjustment that we talk about now where you get it in the mail. You have some — there's no admission element to it. Like I was reading from the statute, it requires that you return to the Immigration Service to be processed for admission to the United States. That's in the statute, Your Honors, at 8 U.C. Section 11. That's not always true. I'm sorry? That's not always true when you're adjusting status? No, it's not. In some — well, moderately when you adjust status, you do end up with an interview at USCIS, but you usually just get it in the mail. You don't have this formalized inspection and examination for admission by an immigration officer. That's what the statute required and would have been required in 1970, that he actually return to the service for this inspection and then admission as a lawful permanent resident. And that's why 212H, even under the alternate construction, wouldn't be available for this Petitioner, because he was admitted. He did get relief under — he did become a lawful permanent resident, and he was admitted as a lawful permanent resident, and he was then subsequently inactivated. To me, the biggest problem with your argument is the Sum case, despite the fact that the facts are not clear underlying it. I mean, the conclusion in the Sum case is the text, structure, and history of this section refer to inspection and authorization by an immigration officer at the point of entry. So why isn't that just the end of it? Because I think he would have had to return, because he would have had to return for this inspection and admission by an immigration officer. And you're saying this particular person would have had to go to a point of entry before he could have gone to Chicago? Yes. Well, I think it was in New York, New York, and that's where he was admitted. All right. But that — I mean, I guess I'm interested in the issue broader than this particular guy who happened to be in New York. What if he was in Iowa? I'm not sure. I don't know the answer to your question, Your Honor. So you think that it does require that you go to a point of entry? Yes. You do? Yes. Really? Well, for this particular — not all adjustments, Your Honor, but because he was a conditional permanent resident under this alternate construction, that's what the statute  I don't know what happened, Your Honor, because he — No, but I'm asking about the waiver provision. Does the waiver provision require that he actually — distinguish between people who were — I mean, the basic question, as I understand it, is does the waiver provision distinguish between people who come across the border and then adjust or people who are here the whole time and adjust? Here at the time — no, I'm sorry. I have it wrong. People who come across as legal permanent residents versus people who come across in some other, let's say, legal status and then adjust. I don't think — Does the statute distinguish those people? That's the underlying question. I don't think it does. I think the Fifth Circuit has disagreed with that, and they have made this distinction in the Martinez case. I don't think it does, actually. The Congress was intending to say that these two groups of aliens are different groups of aliens. I think Congress's focus was on aliens who have been — who are lawful permanent residents and then who have subsequently committed. Has the Board ever decided this question in a published opinion? It's nibbled around the edges of it, but not — Right. It doesn't control our outcome, Your Honor. The Board hasn't. Why wouldn't it make sense for it to do that instead of for us to be flailing around? Well, I think here, because we don't believe that he did have the subsequent adjustment — But there are other cases kicking around this Court. Right, Your Honor. Right. And it may be useful to have such guidance, but we don't, not as to this particular issue. As a more general matter, if the Board chooses not to decide something in a published opinion that's entitled to Chevron deference, then what we've done is we haven't remanded to the Board. We've just said, okay, you don't get Chevron deference. And then if you want to change — if you later want to do a published opinion, then we'll look at it. Right. And that's the Brand X deference, where the Board then comes along later and says something different. Wouldn't it make more sense to say, why don't you send it to us a published opinion first instead of doing it twice? For reasons of judicial economy, it perhaps might be. And I think, actually, the Second Circuit is pretty used to doing that. They'll issue orders saying, please issue us a decision on this. I don't think I've seen that out here from Your Honors yet. Is there any other questions? Okay. Thank you. Thank you. Thank you. First of all, I would like to just bring to your attention that the decision from the BIA does only cite to the fact that the reason that the 212H argument was rejected was due to the Martinez v. Mukasey decision, which was — arose in the Fifth Circuit, and that my client's case arose in the Ninth Circuit. So for the agency to come back and try to argue differently now, I think that they should be precluded from doing so because they were never — it was never raised in the issues way. You mean, as to this argument, that this isn't what happened at all? That's correct. In addition, I would like to also — I did get a copy of the law as it existed back in 1965, and it specifically states that the immigrant visa is a number of people not exceeding one-half the number specified in this paragraph may be made available in lieu of conditional entries of a like number to such aliens who have been continuously physically present in the U.S. for a period of at least two years prior to application for adjustment of status. So the law at the time that existed, it required that a person can be admitted as refugee, and two years later, which has now been changed, the law as it existed back then was under 203A7, and the law as it exists now is under 207 and 209 respectively, that the refugees can now adjust after one year, provided, again, that there's no guarantee that these individuals meet all the eligibility for adjustment of status. So for the government to argue at this time without any merit, without any evidence in the record, that my client entered, and because of his admission, which, again, we raised that at the motion to reopen — reconsider phase as well as the appeal phase, that there was an effective assistance of counsel and my green card was retroactive to the date of admission, which is what the law provided at the time, does not mean that my client admitted that he entered as an LPR. And, you know, for the government or the agency's position to be any different is just going to lead to absurd results, which I think it leads in this particular case, that the government's main argument is that my client entered as a legal permanent resident, which they have no evidence whatsoever, both from testimony or documentary evidence that would sustain any kind of legal reasoning for a reasonable person to assume that their argument, in fact, is legitimate and is consistent with the law. Additionally — Your minute over your time. Do you have a brief point you want to make? I think the only issue that I would like to just discuss — maybe I could present that in a 20-day letter. That would be great. That's fine. Thank you so much. Thank you for your arguments. The case is just furtively submitted for decision. Thank you very much. And at this time, we'll take a 10-minute recess. Thank you. All rise.
judges: Thomas, Wardlaw, Berzon